UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

* * * * *

DIANE VEEN PRICE, an individual; ESTATE
OF LINDA LEE PARADY, by heir and
representative, SHERRI ROCKWELL;
DANIEL CLEMENT, an individual; NASSER
MOFIDI, an individual; KATHY MORRELL,
an individual; ESTATE OF LARRY R. OREL,
by Personal Representative, JOHN OREL, JR.;
ROBERT PAYNE, an individual; EDWARD
AND LINDA WENGELIN, a married couple;
ESTATE OF TWYLA MAE KILL, be heir and
representative, HAROLD KILL JR.; ESTATE
OF GREGORY E. CULP, by heir and
representative, JUSTIN CULP; EDSON
GRABER, an individual; WILLIAM DERBY,
an individual; ESTATE OF RUTH A.
CARNEY, by heir and representative,
KERPATRICK O'BRIEN; ESTATE OF
THEODORE FAUCETTE PARKER, by
Personal Representative, PHYLLIS A.
PARKER; ESTATE OF MARY L. HARDIN,
by heir and representative, ROBBIN
PATTERSON; PLASSMAN FAMILY
PROPERTIES, LLC, a Michigan limited
liability company; ALICE REED, an
individual; JEFFREY URBANAVAGE, an
individual,

        Plaintiffs,

-vs-

CHIPPEWA COUNTY, a Governmental Unit;
CARMEN M. FAZZARI, in her individual and
official capacity; MARJORIE HANK, in her
individual and official capacity; INGHAM
COUNTY, a Governmental Unit; ALAN FOX,
in his individual and official capacity; ERIC
SCHERTZING, in his individual and official

Case No. 23-cv-_____

HON.

**COMPLAINT**

**(JURY DEMAND)**

capacity;  MONTCALM  COUNTY,  a
Governmental Unit; JOANNE VUKIN, in her
individual and official capacity; OCEANA
COUNTY,  a Governmental Unit; MARY LOU
PHILLIPS,  in  her  individual  and  official
capacity; SHEILA GOWELL, in her individual
and official capacity; CALHOUN COUNTY, a
Governmental Unit; BRIAN WENSAUER, in
his  individual  and  official  capacity;
CHRISTINE SCHAUER, in her individual and
official capacity; MANISTEE COUNTY, a
Governmental Unit; RACHEL NELSON, in her
individual and official capacity; and RUSSELL
POMEROY,  in  his  individual  and  official
capacity,

                    Defendants.

---

Donald R. Visser (P27961)
Daniel O. Myers (P49250)
VISSER AND ASSOCIATES, PLLC
*Attorneys for Plaintiffs*
2480 - 44th Street, S.E., Suite 150
Kentwood, MI 49512
(616) 531-9860

E. Powell Miller (P39487)
Christopher D. Kaye (P61918)
Sharon S. Almonrode (P33938)
THE MILLER LAW FIRM, PC
*Attorneys for Plaintiffs*
950 W. University Drive, Suite 300
Rochester, MI  48307
(248) 841-220

Philip L. Ellison (P74117)
OUTSIDE LEGAL COUNSEL, PLC
*Attorney for Plaintiffs*
PO Box 107
Hemlock, MI  48626
(989) 642-0055

Matthew E. Gronda (P73693)
GRONDA PLC
*Attorney for Plaintiffs*
4800 Fashion Square Boulevard, Suite 200
Saginaw, MI  48604
(989) 249-0350

---

## COMPLAINT

---

COME NOW, Plaintiffs DIANE VEEN PRICE, ESTATE OF LINDA LEE PARADY, by heir and representative, SHERRI ROCKWELL, DANIEL CLEMENT, NASSER MOFIDI, KATHY MORRELL, ESTATE OF LARRY R. OREL, by Personal Representative, JOHN OREL, JR., ROBERT PAYNE, EDWARD AND LINDA WENGELIN, ESTATE OF KWYLA MAE KILL, by her and representative, HAROLD KILL JR., ESTATE OF GREGORY E. CULP, by heir and representative, JUSTIN CULP, EDSON GRABER, WILLIAM DERBY, ESTATE OF RUTH A. CARNEY, by heir and representative, KERPATRICK O'BRIEN, ESTATE OF THEODORE FAUCETTE PARKER, by Personal Representative, PHYLLIS A. PARKER, ESTATE OF MARY L. HARDIN, by heir and representative, ROBBIN PATTERSON, PLASSMAN FAMILY PROPERTIES, LLC, ALICE REED, and JEFFREY URBANAVAGE (collectively "Plaintiffs") by and through counsel, and for Plaintiffs' cause of action against Defendants CHIPPEWA COUNTY, CARMEN M. FAZZARI, MARJORIE HANK, INGHAM COUNTY, ALAN FOX, ERIC SCHERTZING, MONTCALM COUNTY, JOANNE VUKIN, OCEANA COUNTY, MARY LOU PHILLIPS, SHEILA GOWELL, CALHOUN COUNTY, BRIAN WENSAUER, CHRISTINE SCHAUER, MANISTEE COUNTY, RACHEL NELSON, and RUSSELL POMEROY (collectively "Defendants"), state as follows:

3

## PARTIES

1.    Plaintiff Diane Veen Price is a resident of Emmet County, who owned real property in Chippewa County, Michigan.

2.    Linda Lee Parady, at the time of her death, was a resident of Midland County that owned real property in Chippewa County, Michigan. Sherri Rockwell is a resident of Bradenton, Florida.

3.    Plaintiff Daniel Clement is a resident of Chippewa County and owned real property in Chippewa County, Michigan.

4.    Plaintiff Nasser Mofidi is a resident of Ingham County and owned real property in Ingham County, Michigan.

5.    Plaintiff Kathy Morrell is a resident of Cleveland, Ohio who owned real property in Ingham County, Michigan.

6.    Larry R. Orel, at the time of his death, was a resident of Ingham County and owned real property in Ingham County, Michigan. John Orel, Jr. is a resident of Ingham County.

7.    Plaintiff Robert Payne is a resident of Ingham County and owned real property in Ingham County, Michigan.

8.    Plaintiffs Edward and Linda Wengelin are residents of Ingham County and owned real property in Ingham County, Michigan.

9.    Twyla Mae Kill, at the time of her death, was a resident of Montcalm County and owned real property in Montcalm County, Michigan. Harold Kill Jr. is a resident of Jackson County.

10.    Gregory E. Culp, at the time of his death, was a resident of Oceana County and owned real property in Oceana County, Michigan. Justin Culp is a resident of Oceana County.

4

11.     Plaintiff Edson Graber is a resident of Green Valley, Arizona who owned real property in Oceana County, Michigan.

12.     Plaintiff William Derby is a resident of Muskegon County who owned real property in Oceana County, Michigan.

13.     Ruth A. Carney, at the time of her death, was a resident of Calhoun County and owned real property in Calhoun County, Michigan. Kerpatrick O'Brien is a resident of Calhoun County.

14.     Theodore Faucette Parker, at the time of his death, was a resident of Durham, North Carolina that owned real property in Calhoun County, Michigan. Phyllis A. Parker is a resident of Durham, North Carolina.

15.     Mary L. Hardin, at the time of her death, was a resident of Calhoun County and owned real property in Calhoun County, Michigan. Robbin Patterson is a resident of Calhoun County.

16.     Plaintiff Plassman Family Properties, LLC is a Michigan limited liability company that owned real property in Calhoun County, Michigan

17.     Plaintiff Alice Reed is a resident of Calhoun County and owned real property in Calhoun County, Michigan.

18.     Plaintiff Jeffrey Urbanavage is a resident of Antrim County, who owned real property in Manistee County, Michigan (Collectively "Plaintiffs").

19.     Defendant counties of CHIPPEWA COUNTY, INGHAM COUNTY, MONTCALM COUNTY, OCEANA COUNTY, CALHOUN COUNTY, and MANISTEE COUNTY are governmental units in the State of Michigan that govern their individual counties (individually each a "County" and collectively, "Counties").

5

20.     Defendant Treasurers CARMEN M. FAZZARI, MAJORIE HANK, ALAN FOX, ERIC SCHERTZING, JOANNE VUKIN, MARY LOU PHILLIPS, SHEILA GOWELL, BRIAN WENSAUER, CHRISTINE SCHAUER, RACHEL NELSON, and RUSSELL POMEROY are or were public officials serving as county treasurers for their respective county and are sued in their personal, individual, and official capacities (individually each a "Treasurer" and collectively, "Treasurers").

21.     The individually named Defendants, except MARJORIE HANK, ERIC SCHERTZING, SHEILA GOWELL, CHRISTINE SCHAUER, and RUSSELL POMEROY, are current, office-holding public officials serving as county treasurers for their respective county and are also sued in their individual and official capacities.

22.     Upon information and belief, Defendant Treasurers were the only public officials who served as County Treasurers for their respective counties during the time period relevant to this Complaint.

23.     Prior to the foreclosures referenced below, Plaintiffs owned real property in the Defendant Counties ("Subject Property" collectively, "Subject Properties") as set forth in **Exhibit A.**

## JURISDICTION

24.     This is a civil action seeking, among other requested relief, recognition of a constructive trust, and unpaid "just compensation" against Defendants for violations of Article 10 of the Michigan Constitution and the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

25.     This court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1343 (civil rights cases); 28 U.S.C. § 2201 (declaratory judgments via the Declaratory

Judgment Act); and 28 U.S.C. § 1367 (supplemental state law claims). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), since Defendants, individually and collectively, conduct or have conducted business in the Western District of Michigan and the Subject Properties involved are physically located within the Western District of Michigan.

## THE TAX FORECLOSURES

26.    Prior to July 17, 2020, the collection of delinquent taxes was set out in the General Property Tax Act, sections MCL § 211.78 to MCL § 211.79A ("GPTA").[1]

27.    The GPTA allowed Counties to voluntarily choose to act as the Foreclosing Governmental Unit ("FGU") in lieu of designating the State of Michigan (the "State") to serve as the FGU for their Counties. *See* MCL 211.78(3).

28.    Defendant Counties and Defendant Treasurers chose to be the FGU pursuant to the General Property Tax Act ("GPTA"), under MCL § 211.78, thus making affirmative, voluntary, and discretionary decisions for the County based on its and/or their own policy.

29.    Under the GPTA, Defendants Counties had multiple opportunities to choose to act as the FGU or have the State act as the FGU.

30.    Defendants Counties chose to act as the FGU.

31.    Defendants caused Plaintiffs' interests in the Subject Properties to be foreclosed pursuant to the GPTA as a result of delinquent taxes, unpaid assessments, fees, penalties, and/or interest ("Tax Foreclosure" or "Tax Foreclosures").

---

[1] On July 17, 2020, the Michigan Supreme Court ruled some provisions of the GPTA were unconstitutional under the Michigan Constitution. Effective December 22, 2020, the GPTA was modified by 2020 Public Act 255 and 2020 Public Act 256.

32.     Upon information and belief, at the time of the Tax Foreclosures, Plaintiffs owed amounts to the Counties for delinquent taxes and/or assessments, interest, penalties, and fees reasonably related to the foreclosure and sale of the Subject Properties ("Tax Delinquency" or "Tax Delinquencies") as shown in **Exhibit A**.

33.     Following the Tax Foreclosures, the Defendants retained ownership or directed, implemented, or gave instructions that the Subject Properties be sold at auction to third parties or that the Subject Properties be conveyed to the State of Michigan, a County, a township, a village, a city, a land bank, or government entity ("Tax Sale" or "Tax Sales").

34.     Upon information and belief, the Defendants received proceeds from the Tax Sales.

35.     Upon information and belief, the Defendants received proceeds from the Tax Sales that exceeded the Tax Delinquencies ("Surplus Proceeds").

36.     The amounts of the Tax Delinquencies at the time of foreclosure sales, the State Equalized Value (or "SEV"), the foreclosure "Sale Price", and "Surplus Proceeds" for the Subject Properties are reflected on **Exhibit A**.

37.     Upon information and belief, the Defendants invested the Surplus Proceeds deriving income (the Surplus Proceeds and the income derived therefrom shall be referred to as "Accrued Surplus Proceeds").

38.     Defendants' actions, as described herein, were undertaken pursuant to an official rule, statute, policy and/or custom, thereby permitting Plaintiffs' claims for liability against the County and others claiming immunity, as set forth in *Monell v New York City Dep't of Social Servs*, 436 US 658; 98 S Ct 2018 (1978) and *Carlton v Dep't of Corr*, 215 Mich App 490; 546 NW2d 671 (1996).

### *RAFAELI* AS THE FOUNDATION FOR THE CLAIMS

39.     On July 17, 2020, the Michigan Supreme Court issued its opinion in *Rafaeli, LLC v. Oakland County*, 505 Mich. 429; 952 N.W.2d 435 (2020) ("*Rafaeli*"), in which the Court held that the Surplus Proceeds from Tax Sale retained by the FGU must be returned to Plaintiffs. The Rafaeli opinion is attached hereto as **Exhibit B**.

40.     *Rafaeli* held that Plaintiffs have a common law right to the Surplus Proceeds and held the County's retention of Surplus Proceeds violated Article X, § 2 of the Michigan Constitution. Specifically, the Michigan Supreme Court opined that:

> To the extent the GPTA permits defendants to retain these surplus proceeds and transfer them into the county general fund, the GPTA is unconstitutional as applied to former property owners whose properties were sold at a tax-foreclosure sale for more than the amount owed in unpaid taxes, interest, penalties, and fees related to the forfeiture, foreclosure, and sale of their properties.

> *Rafaeli*, 505 Mich. at 474-75; 952 N.W.2d at 461.

41.     The *Rafaeli* court's decision recognized Plaintiffs' vested right to return of the Surplus Proceeds as being protected by the Takings Clause of Michigan's Constitution. *Rafaeli*, 505 Mich. at 456.

### *HALL v. MEISNER* AND *TYLER v. HENNEPIN COUNTY* AFFIRM THAT FEDERAL PROTECTIONS APPLY IN ADDITION TO STATE CLAIMS

42.     On October 13, 2022, the Sixth Circuit Court of Appeals issued its opinion in *Hall v. Meisner*, 51 F.4th 185 (2023) ("*Hall*"), in which the Court held that Fifth Amendment protections apply to Tax Foreclosures. The *Hall* opinion is attached hereto as **Exhibit C**.

43.     On May 25, 2023, the United States Supreme Court issued its opinion in *Tyler v. Hennepin County*, 598 U.S. (2023) (Docket No. 22-166) which held that Fifth Amendment

protections apply to owner's equity and that such rights are inherent and thus not subject to being modified by legislative action. The *Tyler* opinion is attached hereto as **Exhibit D**.

44.    Before *Rafaeli*, Plaintiffs were statutorily disabled from filing claims for the return of Surplus Proceeds because the GPTA expressly required the FGU to retain the Surplus Proceeds pursuant to MCL § 211.783(8)(h) and MCL § 211.78n.

45.    Therefore, Plaintiffs were precluded from making a claim for Proceeds prior to issuance of the Michigan Supreme Court's opinion in *Rafaeli*.

46.    The *Rafaeli* court held that Plaintiffs have a common law right to the Surplus Proceeds and held the provisions of the GPTA which required the FGU to retain Surplus Proceeds violated the Michigan Constitution.

47.    The *Rafaeli* decision established Plaintiffs' vested right to return of the Surplus Proceeds.

48.    In Michigan, a claim does not accrue until every element of the cause of action including damages exists. *See Henry v Dow Chem Co*, 319 Mich App 704, 720; 905 NW2d 422 (2017).

49.    Plaintiffs' state and federal taking claims against Defendants accrued at the earliest on July 17, 2020 (hereinafter the "Date of Accrual").

50.    The Defendants have failed to turn over the Surplus Proceeds to Plaintiffs following the Date of Accrual.

51.    The Surplus Proceeds are and have been subject to a constructive, involuntary, and/or *ex delicto* trust.

52.    Pursuant to the decision of the Michigan Supreme Court in *Rafaeli*, as of July 17, 2020, Plaintiffs are entitled to immediate recovery/return of the Surplus Proceeds the Defendants currently hold in constructive trust for the benefit of the Plaintiffs.

53.    After issuance of the *Rafaeli* decision, Defendants' retention of Plaintiffs' Surplus Proceeds was outside the scope of activity authorized by the Constitution, statute, local charter charger or ordinance, or other law.

54.    Defendants' conduct after July 17, 2020 falls outside the "exercise of governmental function."

55.    Defendants' conduct before July 17, 2020 falls outside the "exercise of governmental function."

56.    Defendants' actions and/or interactions were undertaken in willful and wanton disregard of Plaintiffs' property rights guaranteed under the Michigan and United States Constitutions.

57.    Defendants' retention of and/or failure to return Plaintiffs' property is outside the scope of governmental immunity.

58.    Upon information and belief, some of Plaintiffs' Surplus Proceeds were deposited into the Counties' General Fund.

59.    Upon information and belief, Defendant Counties have derived investment income from the retention of the Surplus Proceeds.

60.    Defendants' retention of Plaintiffs' Surplus Proceeds is done so that the Counties can use the Surplus Proceeds for the Counties' own use and for the purpose of earning interest and/or investment income.

61.     The earning of interest and/or investment income is an activity that is conducted primarily for the purpose of producing a pecuniary profit for the Counties.

62.     In addition to the Surplus Proceeds, the Counties continue to hold the interest and/or investment income earned from the Surplus Proceeds.

63.     The Defendants have refused to turn over the Accrued Surplus Proceeds to Plaintiffs on the Date of Accrual or at any time thereafter.

64.     Pursuant to the decision of the Michigan Supreme Court in *Rafaeli*, as of July 17, 2020, Plaintiffs are entitled to the return or turnover of the Surplus Proceeds and, consequently, the return or turnover of the interest and/or investment income earned on the Surplus Proceeds.

65.     After issuance of the *Rafaeli* decision, Defendants' retention of Plaintiffs' Accrued Surplus Proceeds was clearly not within the scope of activity authorized by the Constitution, statute, local charter charger or ordinance, or other law.

66.     Before issuance of the *Rafaeli* decision, Defendants' retention of Plaintiffs' Accrued Surplus Proceeds was clearly not within the scope of activity authorized by the Constitution, statute, local charter charger or ordinance, or other law.

67.     On or after the date of accrual, the Defendants did not afford the Plaintiffs any adequate process, plan, or legal mechanism to seek or achieve the turnover of the Accrued Surplus Proceeds Defendants received for the Subject Properties.

68.     Defendants' retention of Plaintiffs' Surplus Proceeds and interest earned thereupon after the date of accrual and after the Defendants become aware of the *Rafaeli* decision constitutes either intentional misconduct or gross negligence, which is the proximate cause of Plaintiffs' damages.

69.     Defendants converted the difference between the fair market values and Tax Delinquencies (the "Equity" or "Equities") in each of the Subject Properties.

## THE *WAYSIDE* CLASS ACTION

70.     *Wayside v Van Buren County*, United States District Court for the Western District of Michigan Case No. 1:14-cv-01274, was filed December 11, 2014 as a putative class action, alleging a defendant class of Michigan Counties, including Defendant Counties, violated federal law by retaining surplus proceeds from a sale of foreclosed property for unpaid taxes.

71.     On March 24, 2023, the United States District Court for the Western District of Michigan Case preliminarily certified a proposed settlement class. As part of the order, the Court ordered that pending final determination of the proposed Settlement Agreement, "putative Settlement Class Members, other than those who timely and properly have opted out of the Class" could not "directly or indirectly prosecute, institute, or commence any individual or class action with respect to the subject matter of this Action."

72.     All Plaintiffs that were putative class members in the *Wayside* class action have timely and properly submitted a notice opting out of the class prior to the filing of this Complaint.

## COUNT I
## CONSTRUCTIVE TRUST
## (AGAINST ALL DEFENDANTS)

73.     Plaintiffs incorporate the allegations above as if fully restated herein.

74.     Prior to the Michigan Supreme Court's issuance of its Opinion in *Rafaeli*, Plaintiffs were prevented from seeking the turnover of the Surplus Proceeds.

75.     Defendants acquired custody of Plaintiffs' property under such circumstances that Defendants may not in good conscience retain the beneficial interest of the Accrued Surplus Proceeds.

76.    A constructive Trust arises by operation of law. The Michigan Supreme Court in

*Weir v Union Trust Co*, 188 Mich 452, 463; 154 NW2d 357 (1915) stated:

> Constructive trusts arise by operation of law. The following is found in 39 Cyc. p. 169:
>
> 'Constructive trusts do not arise by agreement or from intention, but by operation of law; and fraud, active or constructive, is their essential element. Actual fraud is not necessary, but such a trust will arise whenever the circumstances under which property was acquired make it inequitable that it should be retained by him who holds the legal title. Constructive trusts have been said to arise through the application of the doctrine of equitable estoppel, or under the broad doctrine that equity regards and treats as done what in good conscience ought to be done. Such trusts are also known as trusts *ex maleficio* or *ex delicto*, or involuntary trusts, and their forms and varieties are practically without limit, being raised by courts of equity whenever it becomes necessary to prevent a failure of justice.'

77.    A constructive trust exists when "property has been obtained through fraud, misrepresentation, concealment, undue influence, duress, taking advantage of one's weakness or necessities, or any other similar circumstances which render it unconscionable for the holder of the legal title to retain and enjoy the property." *Kammer Asphalt Paving Co, Inc v East China Twp Sch*, 443 Mich 176, 188; 504 NW2d 635 (1993). Defendants' conduct in failing to turn over Plaintiffs' property is *ex delicto*.

78.    Defendants' acquired possession of and/or title to the Accrued Surplus Proceeds through duress, taking advantage of Plaintiffs' weakness, necessities, or other circumstances.

79.    Defendants acquired and still hold Accrued Surplus Proceeds which are imbued with and subject to a constructive, involuntary and/or *ex delicto* trust for the benefit of Plaintiffs as a matter of law.

80.    It is inequitable and unconscionable for Defendants to retain Plaintiffs' property as well as the benefits Defendants have obtained from retaining Plaintiffs' property.

**COUNT II**
**UNJUST ENRICHMENT**
**(AGAINST DEFENDANT COUNTIES)**

81.    Plaintiffs incorporate the allegations above as if fully restated herein.

82.    Defendant COUNTIES have been unjustly enriched by its illegal taking and/or retention of Plaintiffs' property.

83.    Plaintiffs do not have an adequate and complete remedy at law except as asserted in this Complaint as alternative claims.

84.    It is inequitable for Defendants to retain Plaintiffs' property and the benefits Defendants have obtained from retaining Plaintiffs' property. *Dean v Dep't of Natural Res*, 399 Mich 84; 247 NW2d 876 (1976); *Rafaeli, LLC v Oakland County*, 505 Mich 429; 952 NW2d 434 (2020).

**COUNT III**
**TAKING CLAIM – INVERSE CONDEMNATION**
**(AGAINST DEFENDANT COUNTIES AND DEFENDANT TREASURERS**
**IN THEIR OFFICIAL CAPACITIES)**

85.    Plaintiffs incorporate the allegations above as if fully restated herein.

86.    Defendants refused or have otherwise ignored demands to pay just compensation for Plaintiffs' Surplus Proceeds.

87.    Defendants' failure or refusal to turn over of Plaintiffs' Surplus Proceeds after *Rafaeli* constitutes a taking in violation of Article 10, § 2 of Michigan's 1963 Constitution and the Fifth and Fourteenth Amendments of the United States Constitution.

88.    In addition to the Surplus Proceeds, the Defendants have also retained income earned from the Surplus Proceeds ("Income Takings").

89.     Defendants' retention of earnings and/or interest on Plaintiffs' Surplus Proceeds constitutes an additional taking under Article 10, § 2 of Michigan's 1963 Constitution and the Fifth and Fourteenth Amendments of the United States Constitution.

90.     Defendants' retention of the Accrued Surplus Proceeds is a continual, ongoing taking that is causing a continual accruing harm.  See *HRSS, Inc v Wayne County Treasurer*, 279 F Supp 2nd 846, 854 (2003): "For the reasons stated above, the court finds that, if the interest earned on the overbid surpluses was greater than fees properly attributed to those surpluses, the resulting net interest is the property of the individual that owns the principal and that the County's retention of such interest, if it exists, without any compensation constitutes a taking in violation of the Fifth Amendment."

91.     Defendants have taken Plaintiffs' property without using any direct condemnation process before the taking, including those Defendants could have utilized as outlined under the Uniform Condemnation Procedures Act, MCL 213.51, et seq.

92.     Defendants did not provide Plaintiffs, on or after the date of accrual of their claims, any substantial or adequate opportunity to claim the Accrued Surplus Proceeds generated from the Subject Property, and Defendants did not provide or have an adequate process on or after the date of accrual for Plaintiffs to claim compensation for Defendants' seizure of Plaintiffs' property interest.

93.     Assuming the current version of the GPTA does not allow and/or require the Defendants to turn over the Accrued Surplus Proceeds to Plaintiffs, Section 211.78m(8) of the GPTA, as amended by 2020 Public Act 256, violates the Michigan Constitution.[2]

94.     Defendants have not paid just compensation to the Plaintiffs.

_____

[2] The GPTA was amended on December 22, 2021 by PA 255 and 256.

95.    Defendants will not now pay just compensation to Plaintiffs.

96.    Defendants do not intend to pay just compensation in the future to Plaintiffs.

97.    An inverse condemnation has occurred as to Plaintiffs.

98.    Plaintiffs have been injured by Defendants' actions.

99.    Plaintiffs are entitled to maintain this action as an action for inverse condemnation

and a taking. *See Electro-Tech, Inc v HF Campbell Co*, 433 Mich 57; 445 NW2d 61 (1989).

**COUNT IV**
**CONVERSION**
**(AGAINST ALL DEFENDANTS)**

100.    Plaintiffs incorporate all the allegations above as if fully restated herein.

101.    Defendants' failure to turn over Plaintiffs' Accrued Surplus Proceeds promptly

after the Michigan Supreme Court's decision in *Rafaeli* was released deprived Plaintiffs of their

property and constitutes an act of conversion and theft.

102.    Plaintiffs demanded the Defendants relinquish Plaintiffs' property.

103.    Further demands are excused inasmuch as such efforts would be futile.

104.    Defendants took Plaintiffs' property without Plaintiffs' consent.

105.    Defendants continued control of Plaintiffs' property constitutes conversion,

embezzlement, or theft.

106.    Plaintiffs have been damaged as a direct result and proximate result of Defendants'

actions.

**COUNT V**
**STATUTORY CONVERSION**
**(AGAINST ALL DEFENDANTS)**

107.    Plaintiffs incorporate the allegations above as if fully restated herein.

108.    On July 17, 2020, the Michigan Supreme Court issued its opinion in *Rafaeli*, which authorized Plaintiffs to make claims and receive the Surplus Proceeds.

109.    Plaintiffs demanded Defendants turn over Plaintiffs' property.

110.    Defendants failed or refused to turn over Plaintiffs' property.

111.    Defendants have converted Plaintiffs' Accrued Surplus Proceeds or Equities to the County's own use as contemplated by MCL § 600.2919a.

112.    Defendants' continued retention and control of Plaintiffs' property and Defendants' conversion of Plaintiffs' property to the County's own use constitutes statutory conversion under MCL § 600.2919a.

113.    As a result of Defendants' actions, Plaintiffs sustained damages.

114.    State law provides that a person damaged as a result of a violation of that law, "may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees." MCL § 600.2919a. Plaintiffs are, therefore, entitled to treble damages.

115.    Plaintiffs are entitled to treble damages, costs, and recovery of actual reasonable attorney fees. MCL § 600.2919a.

### COUNT VI
### 42 USC § 1983
### VIOLATION OF SUBSTANTIVE DUE PROCESS
### (AGAINST ALL DEFENDANTS)

116.    Plaintiffs incorporate the allegations above as if fully restated herein.

117.    Pursuant to the Fourteenth Amendment of the United States Constitution, Plaintiffs are entitled to substantive due process.

118.    Defendants' taking of Plaintiffs' property deprived Plaintiffs of substantive due process.

119.    Defendants' conduct in seizing Plaintiffs' Accrued Surplus Proceeds, and refusal to return the same, even after the Michigan Supreme Court's decision in *Rafaeli*, is arbitrary and/or shocks the conscience.

120.    Defendants have not given Plaintiffs just compensation.

121.    Plaintiffs have been damaged as a direct and proximate result of Defendants' violations.

122.    Plaintiffs do not have an adequate remedy at law except as asserted in this Complaint.

### COUNT VII
### 42 USC § 1983
### VIOLATION OF PROCEDURAL DUE PROCESS
### (AGAINST ALL DEFENDANTS)

123.    Plaintiffs incorporate the allegations above as if fully restated herein.

124.    Pursuant to the Fourteenth amendment, Plaintiffs are entitled to procedural due process.

125.    Plaintiffs have a Constitutionally protected property interest in Surplus Proceeds.

126.    Ever since the issuance of *Rafaeli*, Defendants provided no adequate method or procedure for Plaintiffs to secure return of their property or obtain it from Defendants.

127.    Defendants have not given Plaintiffs just compensation.

128.    Defendants' retention of Plaintiffs' Surplus Proceeds without notices or opportunities to be heard deprived Plaintiffs of procedural due process.

129.    Plaintiffs have been damaged as a direct and proximate result of Defendants' violations.

## COUNT VIII
## 42 USC § 1983
## TAKING – FIFTH/FOURTEENTH AMENDMENT VIOLATION
## (AGAINST ALL DEFENDANTS)

130.    Plaintiffs incorporate the allegations above as if fully restated herein.

131.    The Fifth Amendment, made applicable to the States via the Fourteenth Amendment, is a constitutional provision and right requiring the payment of just compensation upon a taking by Defendants. *See Knick v Twp of Scott*, 139 S Ct 2162 (2019).

132.    Defendants have taken Plaintiffs' property and appropriated this property for public use without the payment of just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution.  See *Hall v. Meisner*, 51 F.4th 185 (2023) ("*Hall*").

133.    Defendants' refusal to take (or not take) action to effectuate the return of Plaintiffs' property after *Rafaeli* deprived Plaintiffs of their constitutional right to just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

134.    Plaintiffs are entitled to interest from the time of taking until payment as a part of just compensation in accordance with *Jacobs v United States*, 290 US 13 (1933); *Knick v Twp of Scott*, 139 S Ct 2162 (2019), and their progeny.

135.    Defendants' retention of earnings or interest on the Surplus Proceeds is a continual ongoing taking that is causing a continual harm. *See HRSS, Inc v Wayne County Treasurer*, 279 F Supp 2nd 846, 854 (2003).

136.    Plaintiffs are entitled to just compensation.

137.    Plaintiffs are entitled to their attorney fees and costs as a result of Defendant's actions.

138.    Defendants' taking of Plaintiffs' property also violated and continues to violate 42 USC § 1983 and Plaintiffs are entitled to attorney fees pursuant to 42 USC § 1988.

139.    Plaintiffs have been injured and have suffered damages as a result of Defendants'

actions.

**COUNT IX**
**TAKING – FIFTH/FOURTEENTH AMENDMENT VIOLATION**
**"ARISING DIRECTLY" UNDER THE FIFTH AMENDMENT**
**(AGAINST ALL DEFENDANTS)**

140.    Plaintiffs incorporate the allegations above as if fully restated herein.

141.    Plaintiffs makes this claim directly under the Fifth Amendment of the United States

Constitution (the "Fifth Amendment").

142.    The Fourteenth Amendment of the United States Constitution (the "Fourteenth

Amendment") has made the Fifth Amendment directly applicable to the individual States.

143.    The Takings Clause, applicable to the States through the Fourteenth Amendment,

provides that "private property [shall not] be taken for public use, without just compensation."

*Tyler v. Hennepin Cnty., Minnesota*, 143 S. Ct. 1369, 1375 (2023). See also Id at 1378 ("[t]o

withhold the surplus from the owner would be to violate the Fifth Amendment to the Constitution

and to deprive him of his property without due process of law, or to take their property for public

use without just compensation.") (quoting *United States v. Lawton*, 110 U. S. 146, 150 (1884)).

144.    The taking of Plaintiffs' property without just compensation is in violation of the

Fifth and Fourteenth Amendments of the Constitution of the United States.

145.    Plaintiffs are entitled to just compensation.

146.    By Defendants' refusal to take (or not take) any action effectuating the turnover of

Plaintiffs' property after *Rafaeli*, Defendants have deprived Plaintiffs of Plaintiffs' constitutional

right to just compensation in violation of the Fifth and Fourteenth Amendments, and the violation

can, therefore, be remedied by a direct claim under the Fifth Amendment.

147.    Plaintiffs are entitled to interest from the time of taking until payment as part of just compensation in accordance with *Jacobs v United States*, 290 US 13 (1933); *Kick v Twp of Scott*, 139 S Ct 2162 (2019), and their progeny.

148.    Defendants' retention of earnings or interest on the Surplus Proceeds is a continual ongoing taking that is causing a continual and continuing harm. *See HRSS, Inc v Wayne County Treasurer*, 279 F Supp 2nd 846, 854 (2003).

149.    Plaintiffs have been injured and have suffered damages as a result of Defendants' actions.

150.    Plaintiffs are entitled to costs and attorney fees as a result of Defendant's actions.

### COUNT X
### VIOLATION OF THE EIGHTH AMENDMENT
### (AGAINST ALL DEFENDANTS)

151.    Plaintiffs incorporate all allegations above as if fully restated herein.

152.    This Count is pled to the extent that Defendants argue or assert that Plaintiffs were punished with an *in-rem* civil forfeiture pursuant to the GPTA.

153.    The Eighth Amendment to the United States Constitution (the "Eighth Amendment"), located in the United States Bill of Rights, prohibits the government from imposing excessive fines, which the US Supreme Court has applied to action(s) involving *in-rem* civil forfeitures.

154.    The Fourteenth Amendment makes the Eighth Amendment applicable to the individual States.

155.    By imposing and retaining an excessive fine in the form of the *in-rem* civil forfeiture of Plaintiffs' equity interest in the Subject Properties in excess of the Tax Delinquencies, Plaintiffs' Eighth Amendment rights have been violated. *See Austin v United States*, 509 US 602

(1993) and *Tyler v. Hennepin Cnty., Minnesota*, 143 S. Ct. 1369, 1375 (2023) (Gorsuch, J and Jackson, J, concurring).

156.    Defendants' retention of Plaintiffs' Surplus Proceeds and/or Fair Market Price, which, by definition, is exclusive of the Tax Delinquencies, is punitive and not remedial.

157.    Defendants' conduct was reckless and undertaken with complete indifference to Plaintiffs' federal right to be free from violations of the Eighth Amendment.

158.    Plaintiffs are entitled to their costs and attorney fees as a result of Defendants' actions.

159.    Violations of the Eighth Amendment are remedied by a money judgment against Defendants, pursuant to 42 USC § 1983 and § 1988.

160.    Plaintiffs have been injured and have suffered damages as a result of Defendants' actions.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs pray that this Court grant the following relief:

a.    Enter an order declaring the Defendants' retention of Plaintiffs' Accrued Surplus Proceeds as unconstitutional under the Michigan Constitution and United States Constitution, even if the conduct was taken under and consistent with the General Property Tax Act;

b.    Enter an Order confirming the constructive trust to remedy Defendants' unconscionable withholding of Plaintiffs' property and requiring an accounting and turnover of all Accrued Surplus Proceeds over the relevant time frames;

c.    Enter an Order finding Defendants liable under any or all counts contained herein;

d.    Enter an order for any and all damages and/or compensation as is deemed proper;

e.    Enter an order requiring Defendants to turn over the Accrued Surplus Proceeds due to Plaintiffs;

f.      Enter an order disgorging the interest or money earned by the Defendants on the retention of the proceeds from the Tax Sales of Plaintiffs' property to the extent that the proceeds from the sales exceed the Tax Delinquencies for Plaintiffs' properties;

g.      Enter an order for an award of any and all damages available under state law as applicable, including but not limited to, an award of nominal and punitive damages;

h.      Enter an order for an award of treble the amount of the Accrued Surplus Proceeds, plus actual attorney fees, for violation of MCL 600.2919a;

i.      Enter an order for an award of attorney fees and expenses pursuant to all other applicable laws, rules, or statutes;

j.      Enter an order for an award of attorney fees, costs, and interest from the date of Judgment until Defendants pay the Judgment;

k.      Enter an order adjudging Defendants' conduct to be statutory conversion and a federal taking and order Defendants to pay Plaintiffs three times the Equity or Surplus Proceeds taken/converted, costs, attorney fees, and interest;

l.      Enter an order for all such other legal and equitable relief the Court deems proper.

## JURY DEMAND

For all triable issues, a jury is hereby demanded.

VISSER AND ASSOCIATES, PLLC

Dated: July 26, 2023

/s/ Donald R. Visser
**Donald R. Visser (P27961)**
Daniel O. Myers (P49250)
*Counsel for Plaintiff*